[857 NE2d 47, 823 NYS2d 752]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE DIAZ, Appellant.

Decided September 19, 2006

### APPEARANCES OF COUNSEL

*Legal Aid Society*, New York City (*Cheryl P. Williams* and *Steven Banks* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Hilary Hassler* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The appeal should be dismissed without prejudice. As stated in *People v Genet* (59 NY 80, 81 [1874]), "[t]he whole theory of

criminal proceedings is based upon the idea of the defendant being in the power, and under the control of the court, in his person." Thus, this Court has consistently dismissed appeals where a defendant has absconded (*see People v Smith*, 44 NY2d 613 [1978]; *People v Parmaklidis*, 38 NY2d 1005 [1976]). Moreover, in *People v Del Rio* (14 NY2d 165 [1964]), we dismissed defendant's appeal when he voluntarily absented himself from this Court's jurisdiction by consenting to deportation. Although defendant here has been involuntarily deported, he is nevertheless unavailable to obey the mandate of this Court. While this absence does not mandate dismissal of the appeal, it presents a situation analogous to that of mootness (*see Smith*, 44 NY2d at 617). Analyzing the relevant factors, we determine that it would be inappropriate under the circumstances of this case to retain this appeal.

In exercising our discretion, we dismiss this appeal without prejudice to defendant's making a motion to reinstate the appeal should he return to this Court's jurisdiction (*cf. People v Sullivan*, 28 NY2d 900, 901 [1971] [appeal dismissed where appellant was "not presently available to obey the mandate of the court in the event of an affirmance"]; *People v Sullivan*, 28 NY2d 992 [1971] [dismissed appeal reinstated upon defendant's return to custody]).

R.S. SMITH, J. (dissenting). Defendant was convicted of gang assault in the first degree, and the Appellate Division affirmed his conviction. He claims that he did not have a fair trial, and a Judge of this Court found enough substance in that claim to justify granting leave to appeal. Defendant has now been deported, and the People have moved to dismiss the appeal. Defendant, through counsel, opposes the motion; in other words, defendant continues to ask us to vindicate what he says are his constitutional rights. There is no indication that defendant's absence from the jurisdiction is voluntary.

I do not agree that, under these circumstances, the Court has "discretion" whether to hear defendant's appeal or not. Once leave to appeal has been granted, defendant has a right to have his appeal decided, unless he has, by absconding or by some other voluntary act, furnished a good reason for depriving him of that right (*People v Del Rio*, 14 NY2d 165 [1964]).

In *Del Rio*, we dismissed the appeal of a defendant who had been deported to Cuba following the commutation of his

sentence. We did so, however, only after examining the facts carefully and concluding that the defendant had voluntarily agreed to leave the United States and never to return. We held that by doing so defendant had "abandoned the appeal and deliberately . . . waived and foregone his right to have the appeal heard and decided" (*id.* at 168).

*Del Rio* leaves no doubt that, if the defendant's deportation had been involuntary, he would have retained "his right to have the appeal heard and decided." This is apparent from our summary of the history of the case:

> "On October 3, 1963 . . . we granted a motion made by the People to dismiss the appeal for 'mootness' on a showing that defendant had left the United States for Cuba, that his sentence had been commuted so that the minimum would be the time already served and the maximum a life term, and that he had been released from prison on parole and deported by the United States Immigration Service to his native Cuba.

> "Later, when defendant's application for vacatur of the dismissal was presented to us, we were told (mistakenly, as it now appears) that defendant had 'never executed any waiver, consent, application or other request for commutation' or agreed to his removal from prison and from the United States and that 'the first notice that he had of his deportation was at approximately 3:00 o'clock in the afternoon that he was deported.' We set aside the dismissal and put the appeal back on our calendar.

> "However, as we now learn, we acted on an erroneous statement of alleged facts." (*Id.* at 166-167.)

Defendant here is in the position that we had mistakenly believed the *Del Rio* defendant to be in—he was deported without, as far as appears from this record, any cooperation on his part. We should hear his appeal, as we would have heard the *Del Rio* defendant's appeal if his departure had been involuntary.

The majority says that defendant is "unavailable to obey the mandate of this Court" but does not say what possible "mandate" it refers to. Assuming we affirm defendant's conviction, that cannot and will not undo his deportation or require him to serve more time in a New York prison; there will thus be no

"mandate" for him to obey. Thus, the majority is apparently concerned about compliance with our "mandate" if we should reverse defendant's conviction and order a new trial. The majority assumes that defendant is de facto a fugitive, that to grant him a new trial would be an exercise in futility since he will not appear at it, and thus that the case is for practical purposes moot. The unspoken premise of the majority's decision is that, now that defendant has been deported, he will never, at least voluntarily, be seen or heard from by the New York courts again.

This may well be true, in this and in most other cases where a defendant has been deported, but we should not simply assume it. Defendant has asked us for a new trial, and has not by any voluntary act made a retrial difficult or impossible. He is entitled to have us assume, absent contrary evidence, that he in fact wants a retrial, and will cooperate in any way necessary if his conviction is reversed and the People seek to retry him. While it would be perfectly reasonable to inquire into the facts—to ask defense counsel, for example, to communicate with defendant and to get his assurance that he is not abandoning his appeal and will cooperate with any necessary future proceedings—I think it inappropriate to presume with no proof that a litigant, simply because he is a deportee, is contemptuous of or indifferent to the Court's processes.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur; Judge R.S. SMITH dissents and votes to deny the motion to dismiss in an opinion.

Motion to dismiss appeal granted and appeal dismissed, in a memorandum.